## THE ROBERT H. RATHBUN.

### (District Court, S. D. New York. March 23, 1898.)

COLLISION—TOW AND SAIL VESSEL—LEEWAY—REEFING.

The small schooner G. meeting the tug R. with a tow 4,000 feet long in Long Island Sound went on the tow's windward side in a fresh breeze, and lowered her mainsail shortly before collision for the purpose of reefing, causing her to make unusual leeway, so that though she passed the tug 200 feet distant, she fouled the fourth and fifth boats of the tow. *Held*, that the tug was to blame for not starboarding earlier, and the G. for reefing so near to windward, or not keeping off.

This was a libel in rem by John Gibson against the steam tug Robert H. Rathbun to recover damages resulting from a collision.

Cowen, Wing, Putnam & Burlingham, for libelant.
Alexander & Green and Mr. Hough, for respondent.

BROWN, District Judge. At about 10 o'clock in the evening of October 9, 1897, as the libelant's small schooner Genista was making her way westerly in Long Island Sound bound from Nova Scotia to New Haven, she came in collision with the fourth and fifth barges of a long tow coming eastward, in charge of the tug Robert H. Rathbun, by which the schooner and the barges were all somewhat damaged. The libel and cross libel were filed to recover the damages. The wind was fresh from the north. The schooner was on her starboard tack, heading about W. N. W. Shortly before the collision her mainsail had been lowered for the purpose of reefing. The master was forward as lookout, and the steward at the wheel. The testimony on her part is that the lights of the tug and tow were seen about a mile distant, one or two points on the schooner's port bow; that the schooner kept her course of W. N. W. without change, and at all times had the lights of the tug and tow on her port bow and never on her starboard bow; that she passed to windward of the tug from 50 to 200 feet distant, passed the first and second barges at about the same distance, and the third a little less, but came in collision with the fourth barge by a glancing blow, scraped along her side, and along the hawser connecting with the fifth barge, and that the boat came in contact with the bow of the fifth barge, broke the hawser and passed out to leeward of the rest of the tow. The tug and tow were in all about 4,000 feet long. The boats averaged about 30 feet in length and the hawsers separating them from 80 to 100 fathoms each. The testimony of the different witnesses for the

tug is not wholly in accord. The captain of the tug testifies that there were many other sailing vessels in the Sound that night; that he passed two others a little before the collision, namely, one on each side of him, and that he did not see the Genista's lights until she was within about one-half a mile of him; that his course was E. by S., and that he saw first the schooner's green light, almost immediately both lights, and that soon afterwards the green light was shut in and the red light alone was seen, which at that time was about ahead and about 500 feet distant; that he then sounded the alarm whistles and put his wheel hard-aport; that this was done fearing a collision between the schooner and the tug; that under his port wheel the tug hauled about two points to the southward when the schooner passed abreast of him on the port side at a distance of about 400 feet; that he continued to haul to the southward until his heading was about S. E.; that as the schooner passed him, he did not at first apprehend collision with the barges; that the collision was nearly one-half a mile astern of him, and that he was apprised of it by the blast of a horn from one of the barges, as well as by seeing the shaking of the lights.

The wheelsman, who was in the pilot house with the captain of the tug, states that the red light of the schooner was first seen by him and reported to the captain, who was sitting on a stool in the pilot house; that soon after he saw the red and green light; that when the alarm was given both lights were visible, and that the order to port was given awhile after that, and that he saw three changes in the lights of the schooner.

On consideration of the whole testimony I find that the schooner when seen from the tug was about ahead, and not showing her green light alone, so as to afford any ground of expectation to the tug that her course was to leeward of the tug's course; and that it was therefore the duty of the tug to go to starboard earlier than she did; since the duty was upon her to keep out of the way of the schooner.

I also find the schooner in part to blame because she did not keep a steady course, and for bad management. The evidence indicates that she passed the tug about 200 feet off; and good management, unless the schooner was in part disabled, would have prevented fouling the fourth and fifth barges. The captain saw that the tow was a long one, and he knew that he was making one-half a point leeway, i. e., one foot in ten, or 200 feet in going 2,000 feet. But as the mainsail had been lowered for reefing, I have no doubt the schooner's course was more unsteady and her leeway more on that account. It is that leeway which finally caused collision. When it became necessary to tack to keep away from the hinder boats of the tow, the schooner was unable to do so with her mainsail down. This in part disabled her. It was bad management to lower the mainsail unnecessarily when near the tug; and having done this, it should have prevented her from going near to the tow on the windward side where she was likely to make unusual leeway.

Decree for half damages.